WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Loya,<br><br>    Petitioner,<br><br>vs.<br><br>David Shinn, et al.,<br><br>    Respondents. | CV 19-02104-PHX-SRB (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT COURT:

    On March 29, 2019, Petitioner Rebecca Loya, who is confined in the Arizona State Prison, Perryville - Santa Cruz Unit, Goodyear, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereinafter "habeas petition") (Doc. 1). On June 28, 2019, Respondents filed a Response (Doc. 8). Petitioner has not filed a Reply.

**STATE PROCEDURAL BACKGROUND**

    On August 5, 2011, Petitioner caused a car accident that resulted in the death of two young children and the critical injury of their grandmother. Petitioner has never denied that she was intoxicated at the time. Subsequently, she was charged by the La Paz County Attorney's Office with two counts of second degree murder, two counts of aggravated assault, one count of driving while under the influence ("DUI"), and one count of extreme DUI. She went to trial, and after eight days of testimony and argument, was convicted on all charges. The Arizona Court of Appeals summarized the evidence presented at trial as follows:

> The evidence established that defendant, who by her own admission was tired and stressed, purchased alcohol and proceeded to consume it while planning to drive straight through from El Paso to her home in Newhall, California. In fact the evidence showed that defendant consumed enough alcohol that her BAC was more than two times the legal limit at the time of driving. Furthermore, despite the fact that she realized she had "gone off the road some," the evidence was that defendant's driving continued to be aggressive and dangerous to other drivers. Some of her surrounding drivers, who testified as eyewitnesses at trial, described her driving several miles before the collision as "erratic" and "dangerous" and testified that her driving "scared" them and struck them as "dangerous." Defendant's driving was sufficiently frightening to the drivers around her that several of the eyewitnesses called 911 multiple times to report it. Witnesses described defendant as repeatedly driving two and sometimes all four wheels of her Highlander over the fog line on the side of the highway, speeding up and slowing down constantly, and weaving in and out of traffic repeatedly at speeds of up to 80 m.p.h. in order to "fill in the hole" between cars and "improve her position." Witnesses testified that defendant "consistently" passed too close to other vehicles, and one witness described how he watched defendant overcorrect while passing a tractor trailer rig and almost collided with the truck's rear tires in the process. Several witnesses testified that, based on their observations of her driving, they knew defendant was going to either injure herself or someone else.
>
> Most telling, however, was the evidence that defendant actually pulled into a rest area prior to the collision and could have chosen to stay there. Instead, according to defendant, after using the restroom and throwing out some empty beer bottles, she resumed driving. Within minutes of leaving the rest area, defendant collided with the rear of the Quest at an estimated speed of impact of between 84-91 m.p.h., without ever applying her brakes. The impact was sufficient to blow out all the windows in the Quest and to create a 42.48 inch intrusion into the rear of the vehicle at the deepest part of the crush.

(Exh. Q at 3.)

Petitioner was ultimately sentenced to presumptive sentences of 16 years on the murder charges, 7 and a half years on the assault charges, and 40 days on the DUI and extreme DUI charges. All sentences were ordered to run concurrently. (Exhs. L, M.)

On January 2, 2014, Petitioner appealed her judgment and sentence to the Arizona Court of Appeals. In her opening brief, she raised the following issues: (1) insufficient evidence to support the second degree murder convictions, (2) cumulative prosecutorial misconduct created fundamental error that deprived Petitioner of a fair trial, (3) the trial court abused its discretion by imposing presumptive terms in the absence of any valid aggravating circumstances, and in its determination that significant mitigation existed which it in turn utilized among other factors as a basis for imposing concurrent sentences. (Exh. N.)

1   The Court of Appeals affirmed her convictions and sentence on June 24, 2014. (Exh. Q.) As to Petitioner's claim regarding her second degree murder convictions, the court found that "substantial evidence supports the jury's finding that, 'under circumstances manifesting extreme indifference to human life,' defendant engaged in conduct that created 'a grave risk of death' and thereby caused the death of the two young boys in the Nissan Quest," enough evidence "to justify the jury's finding of 'extreme indifference' required for second degree murder." (Id. at 2-3.) As to Petitioner's claim regarding prosecutorial misconduct, the court examined all of the purported offending comments, and concluded:

> While we find the type of comments made by the prosecutor here improper, we find that they did not rise to the level of reversible error. Based on our review of the entire record, we conclude that defendant was not convicted on the basis of these comments and they did not deny her a fair trial. []
>
> Defendant nonetheless urges us to find that the cumulative effects of the prosecutor's improper conduct here was prejudicial error. Reversal on the basis of prosecutorial misconduct is only appropriate if the conduct is " so pronounced and persistent that it permeates the entire atmosphere of the trial" and makes the resultant conviction a denial of due process. [] Even if there was no error or an error was harmless and did not, by itself, warrant reversal, an incident may still contribute to a finding of "persistent and pervasive misconduct" if the cumulative effect of the incidents shows that the prosecutor "intentionally engaged in improper conduct and 'did so with indifference, if not a specific intent to prejudice the defendant.'" []
>
> On this record, we do not find that the misconduct here so permeated the entire atmosphere of the trial with unfairness that it denied defendant of due process or a fair trial. We do however caution the state that, in other circumstances where the evidence against a defendant is not as overwhelming as it was in this case, our conclusion might not be the same. Because defendant has not established neither fundamental error or prejudice, reversal on the basis of the misconduct in this case does not warrant reversal.[]

(Exh. Q at 8.)

The appellate court also rejected Petitioner's claim relating to her sentence, finding that "[c]ontrary to defendant's contentions, the trial court clearly considered the mitigating factors and clearly found that they were not sufficient to justify a sentence below the presumptive." (Exh. Q at 10.)

On March 3, 2015, Petitioner filed a *pro se* Petition for Post-Conviction Relief ("PCR"), followed by a supplemental petition filed on June 1, 2015, by then-appointed counsel. (Exhs. T-U.) In her PCR filings, Petitioner raised the following issues:

- 3 -

One: Ineffective Assistance of Trial Counsel:

Petitioner's counsel failed to:

a) object to prosecutorial misconduct;
b) move to preclude/object to admission of post-invocation statements;
c) interview any witnesses except accident reconstruction expert;
d) relate Petitioner's mental state to her illnesses;
e) discuss her fibromyalgia with an expert;
f) call expert witnesses at sentencing;
g) give opening statement at the beginning of the trial;
h) make relevant or helpful comments in opening and closing statements;
i) present emotional facts that affected Petitioner's mental state;
j) explain mental states of negligence, recklessness and extreme recklessness;
k) address trial counsel's ill health;
l) trial counsel's breath smelled of alcohol during trial;
m) prepare Petitioner to testify;
n) object to the prosecutor's badgering of Petitioner during her testimony.

Two: Ineffective Assistance of Appellate Counsel: appellate counsel failed to raise certain issues relating to prosecutorial misconduct. (Exh. T.)

Petitioner's supplemental PCR filing expanded upon issues One (a), (b), and (n). (Exh. U.) The trial court denied all of Petitioner's PCR claims, finding that the claims relating to prosecutorial misconduct (issues One (a) and (b)) were precluded, and that the remaining claims were not colorable. (Exh. X.) On December 14, 2015, Petitioner filed a petition for review of that decision in the Arizona Court of Appeals. (Exh. BB.) On August 10, 2017, the court granted review but denied relief in a Memorandum Decision. (Exh. EE.) The court noted that Petitioner "limit[ed] her claims of trial counsel's purported ineffectiveness to his failure to (1) consult <u>fibromyalgia</u> expert witnesses and then relate her <u>fibromyalgia</u> symptoms to her mental state at the time of the offenses; and (2) adequately explain for the jury the differences between criminal negligence, recklessness, and extreme recklessness." (Exh. EE at 2.)

Petitioner filed a petition for review of that decision in the Arizona Supreme Court, which was summarily denied on April 11, 2018. (Exhs. FF, GG.) Petitioner timely filed her *pro se* habeas petition on March 29, 2019. (Doc. 1.) In her petition, she raises the following claims:

1  Ground One:  Petitioner was denied her Fourteenth Amendment rights to liberty, due process
2  and equal protection, as follows:
3      a) trial counsel rushed Petitioner's case to trial despite Petitioner's request for a
4  continuance to the Summer so Petitioner could complete the school year;
5      b) trial counsel did not prepare for trial, and did not inform Petitioner of the motion
6  to vacate filed by the prosecutor;
7      c) trial counsel pressured Petitioner to accept a plea agreement;
8      d) trial counsel failed to prepare a meaningful defense;
9      e) trial counsel's health compromised her defense;
10      f) trial counsel failed to explain to the jury the difference between negligence,
11  recklessness and extreme recklessness and explain how they relate to *mens rea*;
12      g) prosecutorial misconduct.
13  Ground Two: Petitioner was denied her Sixth Amendment right to a "public trial," an
14  impartial jury, and effective assistance of counsel, as follows:
15      a) the trial venue was a small community and the jurors knew each other and knew
16  the attorneys, and trial counsel's wife was the clerk of court;
17      b) the prosecutor referred to defense counsel as his "friend," and some of the jurors
18  took cigarette breaks suggesting they were rushed to complete the trial;
19      c) trial counsel failed to call as witnesses Petitioner's personal doctor, her mental
20  health provider, a fibromyalgia expert, a DUI expert, and character witnesses;
21      d) trial counsel monopolized versus assisted.
22  Ground Three: Petitioner was denied her Fifth Amendment right not to give compelled
23  testimony, was unaware she had the right to refuse to testify due to her physical and mental
24  health.
25  Ground Four: Petitioner was denied her right to be free from excessive bail and punishment,
26  as follows:
27      a) the plea agreement offered required that Petitioner agree to pay 2 million in
28  restitution which was excessive given her limited resources;

1       b) the settlement judge incorrectly advised Petitioner that plea agreements always
2 contemplate a range of sentence;
3       c) other similar case in the trial community afforded resulted in more leniency to
4 community residents.
5 <u>Ground Five</u>: Petitioner was denied her Fourth Amendment right to be secure in her
6 residence, as follows
7       a) prosecutor used post-invocation statements;
8       b) Petitioner was under duress to testify, was unprepared.
9 (Doc. 1.)
10       Respondent asserts that Grounds One (a-e), Two (a-b, d), Three, Four (a-c), and Five
11 (b) of Petitioner's habeas petition are procedurally defaulted, and that Grounds One (f-g), 2
12 (c), and Five (a) fail on the merits.

## DISCUSSION

### Exhaustion and Procedural Default

15       A state prisoner must exhaust his remedies in state court before petitioning for a writ
16 of habeas corpus in federal court. <u>See</u> 28 U.S.C. § 2254(b)(1) and (c); <u>Duncan v. Henry</u>, 513
17 U.S. 364, 365-66 (1995); <u>McQueary v. Blodgett</u>, 924 F.2d 829, 833 (9th Cir. 1991). To
18 properly exhaust state remedies, a petitioner must fairly present his claims to the state's
19 highest court in a procedurally appropriate manner. <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S.
20 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona
21 Court of Appeals by properly pursuing them through the state's direct appeal process or
22 through appropriate post-conviction relief. <u>See</u> <u>Swoopes v. Sublett</u>, 196 F.3d 1008, 1010 (9th
23 Cir. 1999); <u>Roettgen v. Copeland</u>, 33 F.3d 36, 38 (9th Cir. 1994).
24       Proper exhaustion requires a petitioner to have "fairly presented" to the state courts
25 the exact federal claim he raises on habeas by describing the operative facts and federal legal
26 theory upon which the claim is based. <u>See, e.g.</u>, <u>Picard v. Connor</u>, 404 U.S. 270, 275-78
27 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim
28 he urges upon the federal courts."). A claim is only "fairly presented" to the state courts

when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

Additionally, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31.

If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[1] and "adequate"[2] – review of the merits of the claim by a federal habeas court is ordinarily barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir.

---

[1] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[2] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)).

Specifically, in Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See, e.g., Stewart, 536 U.S. 856, 860 (2002) (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart , 536 U.S. 856; see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor

external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). The petitioner must also show actual prejudice, not just the possibility of prejudice. U.S. v. Braswell, 501 F.3d 1147, 1150 (9th Cir. 2007).

Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. See Rhines v. Weber, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless."

**Grounds 1(c), 2(a), 2(d), 3, 4(a-b), 5(b).**

Petitioner never presented ground 1(c) [she was pressured to accept a plea agreement], 2(a) [impartial jury], 2(d) [trial counsel monopolized versus assisted], 3 [she was compelled to testify], 4(a) [the proffered plea agreement mandated excessive restitution], 4(b) [she was mis-advised by the settlement judge as to 'standardized' plea agreements], and 5(b) [Petitioner's testimony was given under duress], in the state court and thus these claims are unexhausted and precluded from review.

**Grounds 1(a-b, d, e) and 2(b).**

Petitioner raised in her PCR and supplemental PCR proceedings ground 1(a) [trial counsel did not seek a trial continuance], 1(b) [trial counsel did not prepare for trial], 1(d) [trial counsel did not present a meaningful defense], 1(e) [trial counsel had health issues], and 2(b) [prosecutor referred to trial counsel as 'friend'], but did not present them to the Arizona Court of Appeals in her Petition for Review. Thus, she failed to "invoke[] one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. Thus, these claims are unexhausted.

**Ground 4(c).**

To the extent that Petitioner's ground 4(c) [other similar cases in the trial community were afforded more leniency] states a claim, Petitioner did not present the claim in state court proceedings. To fairly present a claim, a petitioner must "present the state courts with the same claim he urges upon the federal courts." Picard, 404 U.S. at 276. The closest-in-substance claim Petitioner raised in state court proceedings was that she should have received a more lenient sentence. That claim was presented on direct appeal as a purely state law claim. (Exh. N.) Thus, Petitioner has not "fairly presented" her claim to the state courts by describing the operative facts and federal legal theory upon which the claim is based. Picard, 404 U.S. at 275-78. Petitioner's claim is unexhausted.

**Procedural Default**

Petitioner's unexhausted claims are procedurally defaulted, as a return to state court now to exhaust these claims would be futile in light of Arizona State procedural rules. See, Ariz. R. Crim. P. 32.1(d)-(h), 32.2(a) & (b) (30-day time limit; successive PCR petitions are limited to claims of being held in custody beyond sentencing expiration, newly-discovered facts, requests for delayed appeal, significant change in the law, and actual innocence). Claims filed outside the time limit, or not raising an exception set forth in the Rules, are subject to summary dismissal in state court. See, e.g., State v. Diaz, 269 P.3d 717, 719-21 (Ariz. Ct. App. 2012).

A petitioner can overcome procedural default by demonstrating cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will occur. Coleman, 501 U.S. at 750. Petitioner has not argued cause in her habeas petition, or that a fundamental miscarriage will occur if her claims are not heard, and has not filed a reply to the state's response. Thus, the aforementioned claims are procedurally defaulted without excuse, and should be denied and dismissed with prejudice.

**Merits**

Pursuant to the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state

1  court decision was (1) contrary to, or an unreasonable application of, clearly established
2  federal law as determined by the United States Supreme Court; or (2) based on an
3  unreasonable determination of the facts in light of the evidence presented in the state court
4  proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000)
5  (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard
6  of review). This standard is "difficult to meet." Harrington v. Richter, 562 U.S. 86, 102
7  (2011). It is also a "highly deferential standard for evaluating state court rulings, which
8  demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti,
9  537 U.S. 19, 24 (2002) (per curium) (citation and internal quotation marks omitted). "When
10 applying these standards, the federal court should review the 'last reasoned decision' by a
11 state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

12       A state court's decision is "contrary to" clearly established precedent if (1) "the state
13 court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"
14 or (2) "if the state court confronts a set of facts that are materially indistinguishable from a
15 decision of [the Supreme Court] and nevertheless arrives at a result different from [its]
16 precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an
17 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule
18 but then applies it to a new set of facts in a way that is objectively unreasonable, or 2)
19 extends or fails to extend a clearly established legal principle to a new context in a way that
20 is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

**Ineffective Assistance of Counsel**

22       To establish a claim of ineffective assistance of counsel a petitioner must demonstrate
23 that counsel's performance was deficient under prevailing professional standards, and that
24 he suffered prejudice as a result of that deficient performance. See id. at 687-88. To establish
25 deficient performance, a petitioner must show "that counsel's representation fell below an
26 objective standard of reasonableness." Id. at 699. A petitioner's allegations and supporting
27 evidence must withstand the court's "highly deferential" scrutiny of counsel's performance,
28 and overcome the "strong presumption" that counsel "rendered adequate assistance and made

1  all significant decisions in the exercise of reasonable professional judgment." Id. at 689-90.
2  A petitioner bears the burden of showing that counsel's assistance was "neither reasonable
3  nor the result of sound trial strategy," Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir.
4  2001), and actions by counsel that "'might be considered sound trial strategy'" do not
5  constitute ineffective assistance. Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana,
6  350 U.S. 91, 101 (1955)).

7  To establish prejudice, a petitioner must show a "reasonable probability that, but for
8  counsel's unprofessional errors, the result of the proceeding would have been different." Id.
9  at 694. A "reasonable probability" is one "sufficient to undermine confidence in the
10 outcome." Id. Courts should not presume prejudice. See Jackson v. Calderon, 211 F.3d 1148,
11 1155 (9th Cir. 2000). Rather, a petitioner must affirmatively prove actual prejudice, and the
12 possibility that a petitioner suffered prejudice is insufficient to establish Strickland's
13 prejudice prong. See Cooper v. Calderon, 255 F.3d 1104, 1109 (9th Cir. 2001) ("[A
14 petitioner] must 'affirmatively prove prejudice.' ... This requires showing more than the
15 possibility that he was prejudiced by counsel's errors; he must demonstrate that the errors
16 actually prejudiced him.") (quoting Strickland, 466 U.S. at 693). However, the court need
17 not determine whether counsel's performance was deficient if the court can reject the claim
18 of ineffectiveness based on the lack of prejudice. See Jackson, 211 F.3d at 1155 n.3 (the
19 court may proceed directly to the prejudice prong).

20                         **Grounds 1(f), 1(g), 2(c), 5(a).**

21 Respondents assert that grounds 1(f) [trial counsel failed to explain negligence,
22 recklessness and extreme recklessness], 1(g) [prosecutorial misconduct], 2(c) [trial counsel
23 failure to call witnesses], and 5(a) [prosecutor's commenting on post-invocation silence],
24 lack merit.

25 As to ground 1(f), the appellate court found that the trial court did not err in finding
26 that Petitioner "was not prejudiced by whatever inadequacy resulted from defense counsel's
27 explanation to the jury of the applicable mental states." (Exh. EE at 4.) The court cited to
28 the trial court's finding that the jury had been read the instructions regarding "all of the

1 relevant mental states at the opening of the trial as well as at the end of the trial," that the jury had deliberated almost four hours, and that the "sole issue at trial was the mental states." (Id.). The appellate court rejected Petitioner's argument that "[t]he fact that the jury was provided instructions regarding the various mental states and then deliberated for nearly four hours does not conclusively establish that the jurors understood the difference between the complicated legal terms." (Id. at 4-5.) The court found that Petitioner had not identified any facts or legal authority in support of this assertion. (Id.)

Petitioner fails to identify how the appellate court's rejection of her claim is contrary to or an unreasonable application of Strickland, or was based upon an unreasonable determination of the facts, despite her burden to do so. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (petitioner carries the burden under §2254(d)). Pursuant to Strickland, a petitioner must "affirmatively prove" that prejudice resulted from counsel's deficient performance. 466 U.S. at 693. Here, the court applied the law correctly, and did not unreasonably determine the facts. Petitioner's claim fails on the merits.

As to ground 1(g), the Arizona Court of Appeals, in its ruling on Petitioner's petition for review of the trial court's PCR ruling, found as follows:

> To state a colorable claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objectively reasonable standards and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) []. If a defendant fails to make a sufficient showing on either prong of the *Strickland* test, the superior court need not determine whether the defendant satisfied the other prong. *State v. Salazar*, 146 Ariz. 540, 541 (1985).
>
> Loya is correct that she could not have raised ineffective assistance of counsel claims on direct appeal regarding trial counsel's failure to object to instances of alleged prosecutorial misconduct. But this court addressed in Loya's direct appeal the substantive instances of misconduct and concluded misconduct did not occur or Loya did not suffer prejudice. Given those conclusions, Loya either cannot show that trial counsel's failure to object fell below objectively reasonable standards, or alternatively, that she suffered resulting prejudice. Because both showings are necessary to state a colorable claim of ineffective assistance of counsel, the court did not err in dismissing Loya's failure-to-object claim. Although the superior court dismissed this claim on preclusion grounds, this court may affirm a result on any basis supported by the record.

(Exh. EE at 2-3.)

Petitioner does not identify how the appellate court erred in reaching this conclusion. Although the appellate court, in its opinion on direct review, did find some instances of improper comments by the prosecutor, it found that those individual instances, and all instances cumulatively did not cause prejudice to Petitioner. The trial court later determined in PCR proceedings that Petitioner was precluded from raising her ineffective assistance claim on this issue, given the appellate court finding of lack of prejudice. The reviewing court's affirmance of this ruling was not an unreasonable application of Strickland. See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (the prosecutor's misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."). Petitioner's claim lacks merit.

As to ground 2(c), the appellate court found that the trial court did not err in dismissing Petitioner's ineffective assistance claim as it related to his failure to consult with a fibromyalgia expert, and to utilize such an expert to testify regarding the disease's effect on her mental state. The court noted that "[i]n dismissing the Rule 32 proceeding the superior court found that Loya could not prove prejudice because:

> Loya's voluntary consumption of alcohol in an amount to have her BAC between 0.185 and 0.241 at the time of the collision would extremely undermine any evidence concerning fibromyalgia, how alcohol helps alleviate some of its symptoms and its effect on her mental state at the time of the collision."

(Exh. EE at 4.) The appellate court concluded that Petitioner "does not explain how the superior court erred in making this finding [], " and that "[g]iven the superior court's superior position vis-á-vis this court to evaluate what effect, if any, the proffered evidence would have had on the jury, this court cannot conclude that the court abused its discretion." (Id.)

In her habeas petition, Petitioner fails to identify error in the court's determination of the facts or in its application of the law. Petitioner's claim lacks merit.

As to ground 5(a), the appellate court denied the claim that her trial counsel was ineffective by not objecting to the prosecutor's reference during trial to her "post-invocation" statements:

> Turning to Loya's allegation that ineffective assistance occurred as a result of trial counsel's failure to challenge statements, Loya does not indicate what those statements were. In any event, she admits that this court concluded misconduct did not occur because the prosecutor did not refer to Loya's statements as a comment upon her exercising her constitutional rights. Absent such a comment, trial counsel's failure to challenge the admissibility of those statements did not fall below objectively reasonable standards. *Cf. State v. White*, 16 Ariz. App. 279, 282 (1972) (noting a direct or indirect comment upon defendant's failure to testify or give evidence at trial violates his or her constitutional rights). Accordingly, because Loya failed to raise a colorable claim of ineffective assistance of counsel on this basis, the superior court properly dismissed this claim.

(Exh. EE at 3.)

Petitioner does not identify how the court misconstrued the facts or misapplied the law in deciding her claim. In her habeas claim, Petitioner references the introduction at trial of a statement she made to a law enforcement officer who had arrived at the accident scene, and who had obtained a warrant for a blood sample. The officer testified that Petitioner asked for her reading glasses so that she could read the warrant. (Doc. 1 at 11.) Petitioner does not establish that the testimony was a comment on her invocation of her Fourth Amendment rights. It was a question Petitioner asked when presented with a valid warrant for the collection of a blood sample. The appellate court's determination that trial counsel's failure to object was not deficient performance, was not contrary to clearly established federal law or an unreasonable determination of facts developed in the state court proceedings. Petitioner's claim lacks merit.

## CONCLUSION

Having determined that Petitioner's claims in her habeas petition are procedurally defaulted without excuse, or lack merit, the Court will recommend that Petitioner's habeas petition be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling

- 15 -

debatable, and Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 24th day of April, 2020.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge