**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Loya, | No. CV-19-02104-PHX-SRB |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

The Court now considers Petitioner Rebecca Loya ("Petitioner")'s pro se Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition") (Doc. 1, ("Pet.")). The Magistrate Judge issued a Report and Recommendation on April 27, 2020, recommending that the Petition be denied and dismissed with prejudice and that a certificate of appealability and leave to proceed *in forma pauperis* on appeal be denied. (*See* Doc. 9, R. & R.) Petitioner timely objected. (*See* Doc. 17, Obj. to R. & R. ("Obj.").) Respondents filed a Response to the Objections ("Response") on August 14, 2020. (*See* Doc. 20, Resp. to Petitioner's Obj. to R. & R. ("Resp.").) Having reviewed the record de novo, the Court overrules the Objections, adopts the Report and Recommendation, denies the Petition, and dismisses it with prejudice.

**I.    BACKGROUND**

The background of this case was thoroughly summarized in the Report and Recommendation and is incorporated herein:

> On August 5, 2011, Petitioner caused a car accident that resulted in the death of two young children and the critical injury of their grandmother.

Petitioner has never denied that she was intoxicated at the time. Subsequently, she was charged by the La Paz County Attorney's Office with two counts of second degree murder, two counts of aggravated assault, one count of driving while under the influence ("DUI"), and one count of extreme DUI. She went to trial, and after eight days of testimony and argument, was convicted on all charges. The Arizona Court of Appeals summarized the evidence presented at trial as follows:

> The evidence established that defendant, who by her own admission was tired and stressed, purchased alcohol and proceeded to consume it while planning to drive straight through from El Paso to her home in Newhall, California. In fact the evidence showed that defendant consumed enough alcohol that her BAC was more than two times the legal limit at the time of driving. Furthermore, despite the fact that she realized she had "gone off the road some," the evidence was that defendant's driving continued to be aggressive and dangerous to other drivers. Some of her surrounding drivers, who testified as eyewitnesses at trial, described her driving several miles before the collision as "erratic" and "dangerous" and testified that her driving "scared" them and struck them as "dangerous." Defendant's driving was sufficiently frightening to the drivers around her that several of the eyewitnesses called 911 multiple times to report it. Witnesses described defendant as repeatedly driving two and sometimes all four wheels of her Highlander over the fog line on the side of the highway, speeding up and slowing down constantly, and weaving in and out of traffic repeatedly at speeds of up to 80 m.p.h. in order to "fill in the hole" between cars and "improve her position." Witnesses testified that defendant consistently passed too close to other vehicles, and one witness described how he watched defendant overcorrect while passing a tractor trailer rig and almost collided with the truck's rear tires in the process. Several witnesses testified that, based on their observations of her driving, they knew defendant was going to either injure herself or someone else.
>
> Most telling, however, was the evidence that defendant actually pulled into a rest area prior to the collision and could have chosen to stay there. Instead, according to defendant, after using the restroom and throwing out some empty beer bottles, she resumed driving. Within minutes of leaving the rest area, defendant collided with the rear of the Quest at an estimated speed of impact of between 84-91 m.p.h., without ever applying her brakes. The impact was sufficient to blow out all the windows in the Quest and to create a 42.48 inch intrusion into the rear of the vehicle at the deepest part of the crash.

(Exh. Q at 3.)

Petitioner was ultimately sentenced to presumptive sentences of 16 years on the murder charges, 7 and a half years on the assault charges, and 40 days on the DUI and extreme DUI charges. All sentences were ordered to run concurrently. (Exhs. L, M.)

On January 2, 2014, Petitioner appealed her judgment and sentence to

the Arizona Court of Appeals. In her opening brief, she raised the following issues: (1) insufficient evidence to support the second degree murder convictions, (2) cumulative prosecutorial misconduct created fundamental error that deprived Petitioner of a fair trial, (3) the trial court abused its discretion by imposing presumptive terms in the absence of any valid aggravating circumstances, and in its determination that significant mitigation existed which it in turn utilized among other factors as a basis for imposing concurrent sentences. (Exh. N.)

The Court of Appeals affirmed her convictions and sentence on June 24, 2014. (Exh. Q.) As to Petitioner's claim regarding her second degree murder convictions, the court found that "substantial evidence supports the jury's finding that, 'under circumstances manifesting extreme indifference to human life,' defendant engaged in conduct that created 'a grave risk of death' and thereby caused the death of the two young boys in the Nissan Quest," enough evidence "to justify the jury's finding of 'extreme indifference' required for second degree murder." (Id. at 2-3.) As to Petitioner's claim regarding prosecutorial misconduct, the court examined all of the purported offending comments, and concluded:

> While we find the type of comments made by the prosecutor here improper, we find that they did not rise to the level of reversible error. Based on our review of the entire record, we conclude that defendant was not convicted on the basis of these comments and they did not deny her a fair trial. []
>
> Defendant nonetheless urges us to find that the cumulative effects of the prosecutor's improper conduct here was prejudicial error. Reversal on the basis of prosecutorial misconduct is only appropriate if the conduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial" and makes the resultant conviction a denial of due process. [] Even if there was no error or an error was harmless and did not, by itself, warrant reversal, an incident may still contribute to a finding of "persistent and pervasive misconduct" if the cumulative effect of the incidents shows that the prosecutor "intentionally engaged in improper conduct and 'did so with indifference, if not a specific intent to prejudice the defendant.'" []
>
> On this record, we do not find that the misconduct here so permeated the entire atmosphere of the trial with unfairness that it denied defendant of due process or a fair trial. We do however caution the state that, in other circumstances where the evidence against a defendant is not as overwhelming as it was in this case, our conclusion might not be the same. Because defendant has not established neither fundamental error or prejudice, reversal on the basis of the misconduct in this case does not warrant reversal. []

(Exh. Q at 8.)

The appellate court also rejected Petitioner's claim relating to her sentence, finding that "[c]ontrary to defendant's contentions, the trial court clearly considered the mitigating factors and clearly found that they were not sufficient to justify a sentence below the presumptive." (Exh. Q at 10.)

On March 3, 2015, Petitioner filed a *pro se* Petition for Post-Conviction Relief ("PCR"), followed by a supplemental petition filed on June 1, 2015 by then-appointed counsel. (Exhs. T-U.) In her PCR filings, Petitioner raised the following issues:

One: Ineffective Assistance of Trial Counsel:

Petitioner's counsel failed to:

a) object to prosecutorial misconduct;
b) move to preclude/object to admission of post-invocation statements;
c) interview any witnesses except accident reconstruction expert;
d) relate Petitioner's mental state to her illnesses;
e) discuss her fibromyalgia with an expert;
f) call expert witnesses at sentencing;
g) give opening statement at the beginning of the trial;
h) make relevant or helpful comments in opening and closing statement;
i) present emotional facts that affected Petitioner's mental state;
j) explain mental states of negligence, recklessness and extreme recklessness;
k) address trial counsel's ill health;
l) trial counsel's breath smelled of alcohol during trial;
m) prepare Petitioner to testify;
n) object to the prosecutor's badgering of Petitioner during her testimony.

Two: Ineffective Assistance of Appellate Counsel: appellate counsel failed to raise certain issues relating to prosecutorial misconduct. (Exh. T.)

Petitioner's supplemental PCR filing expanded upon issues One (a), (b), and (n). (Exh. U.) The trial court denied all of Petitioner's PCR claims, finding that the claims relating to prosecutorial misconduct (issues One (a) and (b)) were precluded, and that the remaining claims were not colorable. (Exh. X.) On December 14, 2015, Petitioner filed a petition for review of that decision in the Arizona Court of Appeals. (Exh. BB.) On August 20, 2017, the court granted review but denied relief in a Memorandum Decision. (Exh. EE.) The court noted that Petitioner "limit[ed] her claims of trial counsel's purported ineffectiveness to his failure to (1) consult fibromyalgia expert witnesses and then relate her fibromyalgia symptoms to her mental state at the time of the offenses; and (2) adequately explain for the jury the differences between criminal negligence, recklessness, and extreme recklessness." (Exh. EE at 2.)

Petitioner filed a petition for review of that decision in the Arizona Supreme Court, which was summarily denied on April 11, 2018. (Exhs. FF, GG.)

(R. & R. at 1–4.)

Petitioner filed her Petition on March 29, 2019 asserting five grounds for relief: (1) violations of her Fourteenth Amendment rights to liberty, due process, and equal protection; (2) violations of her Sixth Amendment rights to a public trial, an impartial jury, and effective assistance of counsel; (3) violation of her Fifth Amendment right to not be

- 4 -

compelled to testify against herself; (4) violations of her Eighth Amendment right to be free of excessive bail and punishment; and (5) violations of her Fourth Amendment right to be secure in her "person." (*See* Pet. at 6–10.)

Petitioner presented seventeen specific allegations under the five grounds: 1(a) trial counsel rushed Petitioner's case to trial despite her request for a continuance; 1(b) trial counsel did not properly prepare for trial and failed to inform Petitioner of the prosecutor's motion to vacate; 1(c) trial counsel pressured Petitioner to accept the plea agreement; 1(d) trial counsel did not present a thorough, meaningful defense; 1(e) trial counsel's ill health compromised her defense; 1(f) trial counsel did not explain the difference between negligence, recklessness, and extreme recklessness to the jury and how they relate to *mens rea*; 1(g) prosecutorial misconduct permeated the trial; 2(a) trial venue was a small community where the jurors knew each other and the attorneys and where trial counsel's wife was the clerk of court; 2(b) prosecutor referred to trial counsel as his "friend" and juror cigarette breaks suggest they rushed to complete trial; 2(c) trial counsel failed to call Petitioner's personal doctor, her mental health provider, a fibromyalgia expert, a DUI expert, or character witnesses at trial; 2(d) trial counsel monopolized defense rather than assisted; (3) Petitioner was pressured to testify against herself and was unaware that she even had the right to refuse to testify because of her physical and mental health at the time of trial; 4(a) the offered plea agreement was excessive given Petitioner's limited resources; 4(b) Petitioner was incorrectly advised by the settlement judge that plea agreements always contemplate a range of sentences; 4(c) other cases in the trial community resulted in more lenient sentences for community residents; 5(a) the prosecutor used Petitioner's post-invocation statements; and 5(b) Petitioner was under duress to testify. (*See* Pet. at 6–10; R. & R. at 5–6.) The Report and Recommendation rejected grounds 1(a)–(e), 2(a)–(b), 2(d), 3, 4(a)–(c), and 5(b) as unexhausted and procedurally defaulted.[1] (R. & R. at 9–10.) It also

---

[1] The Report and Recommendation referred to the procedurally defaulted claims as "unexhausted." (R. & R. at 10). The Court notes that Petitioner's claims, because they are procedurally defaulted, are technically exhausted because there are no longer any state remedies available to her. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Therefore, the claims are technically exhausted, but procedurally defaulted based on an implied state law bar. *See id.* at 735 n.1.

- 5 -

rejected grounds 1(f), 1(g), 2(c), and 5(a) on the merits. (*Id.* at 10–15.)

Petitioner raises two objections: (1) the Magistrate Judge incorrectly concluded that Petitioner's unexhausted claims were procedurally defaulted because Petitioner could still amend her PCR petition upon a showing of good cause under Arizona Rule of Criminal Procedure 32.9(d); and (2) the Magistrate Judge incorrectly concluded that grounds 1(c), 2(a), 2(d), 3, 4(a), 4(b), and 5(b) were procedurally defaulted because *Martinez v. Ryan*[2] excuses procedural default for claims of ineffective assistance of trial counsel when the failure to assert those claims was due to the ineffectiveness of PCR counsel.[3] (*See* Obj. at 9–14.)

## II.   LEGAL STANDARD

A district court "must make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). A court need review only those portions objected to by a party, meaning a court can adopt without further review all portions not objected to. *See Reyna-Tapia*, 328 F.3d at 1121. For those portions of a Magistrate Judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress . . . intended to require a district judge to review a magistrate's report to which no objections are filed."); *Reyna–Tapia*, 328 F.3d at 1121 ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made,* but not otherwise.").

## III.   OBJECTIONS

### A.   Procedurally Defaulted Claims and Arizona Rule of Criminal Procedure 32.9(d)

For a federal court to consider claims under 28 U.S.C. § 2254, a petitioner must first

---

[2] 566 U.S. 1 (2012).
[3] Petitioner does not object to the Magistrate Judge's recommendation to dismiss grounds 1(f), 1(g), 2(c), or 5(a) on the merits. Therefore, that portion of the Report and Recommendation is adopted without review. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (concluding that a district court, without review, can adopt all portions of the report to which a petitioner has not objected).

exhaust all remedies in state court. *See* 28 U.S.C. § 2254(b)(1)(A). To properly exhaust claims in Arizona, a petitioner must fairly present them to the Arizona Court of Appeals via either direct appeal of conviction or through appropriate post-conviction relief. *See Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (per curiam). If a petitioner fails to present the exact federal claim raised in habeas in prior proceedings or fails to present such a claim in one full round of the state appellate process, the claim is unexhausted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 945 (1999) ("State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("It has been settled . . . that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus.").

A federal court generally may not review an unexhausted claim if it is subject to an independent[4] and adequate[5] state procedural bar that would make a return to state court futile. *See Coleman*, 501 U.S. at 735 n.1; *Franklin v. Johnson*, 290 F.3d 1223, 1230–31 (9th Cir. 2002). In Arizona, petitioners are generally barred from returning to state court to properly exhaust their federal claims because Rules 32.2(a) (rule of preclusion) and 32.4 (time bar) of the Arizona Rules of Criminal Procedure prevent filing successive PCR petitions except in limited circumstances. *See* Ariz. R. Crim. P. 32.1(b)–(h), 32.2(b). Both Rule 32.2(a) and Rule 32.4 have been held to be independent of federal law and adequate. *See Martinez*, 566 U.S. at 10 ("There is no dispute that Arizona's procedural bar on successive petitions is an independent and adequate state ground."); *see also Stewart*, 536 U.S. at 860; *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014); *Murray v. Schriro*, 745 F.3d 984, 1016 (9th Cir. 2014). "Federal habeas review of [procedurally defaulted] claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the

---

[4] A state procedural rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam).
[5] A rule is "adequate" if it is "strictly or regularly followed." *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quotation and citation omitted).

claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

In her recommendation, the Magistrate Judge determined that: Petitioner never previously presented grounds 1(c), 2(a), 2(d), 3, 4(a)–(b), and 5(b) to any court; Petitioner presented grounds 1(a)–(b), 1(d)–(e), and 2(b) in the initial PCR proceedings but did not present them to the Arizona Court of Appeals on review; and Petitioner did not "fairly present" ground 4(c) in state court proceedings. (R. & R. at 9–10.) She concluded that each claim was unexhausted and procedurally defaulted because a return to state court to present them would be futile under Arizona's procedural rules. (*Id.* at 9–10 (citing Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a)–(b)).)

Petitioner objects to the Magistrate Judge's conclusion. (Obj. at 9–13.) Petitioner argues that a return to state court is not futile because Arizona Rule of Criminal Procedure 32.9(d) allows the state superior court, upon only a showing of good cause, to permit amendments to a PCR petition even after the petition has been denied.[6] (*Id.* at 9–11.) Petitioner requests the Court grant a stay to allow her to pursue amendment of her PCR petition. (*Id.* at 11–12.) Respondents agree that a PCR petitioner may move to amend a petition after denial. (Resp. at 2.) However, Respondents argue there is no case law to support Petitioner's stance that a PCR petition can be amended after the PCR proceedings have concluded in the state appellate courts. (*Id.*)

Petitioner relies entirely on *Scott v. Shriro*[7] to contend that amendments to a PCR petition are allowed at any time, even *five years* after the PCR court denied the petition, the PCR court upheld the denial upon reconsideration, the Arizona Court of Appeals affirmed the denial, and the Arizona Supreme Court declined to review that decision. (*Id.* at 10–11; *see* Exs. X, AA, EE, GG.) Petitioner misstates the breadth of Rule 32.9(d).

---

[6] Petitioner did not present this argument to the Magistrate Judge in her Petition, and she filed no Reply to Respondent's Answer to the Petition, which argued for dismissal of the claims as procedurally defaulted. (*See* Pet.; Doc. 8, Ans. to Pet. for Writ of Habeas Corpus at 7–15.) The Court notes that Petitioner retained counsel only after the Report and Recommendation had been issued. (*See* Doc. 12, Notice of Appearance.) Although the argument that the PCR petition could yet be amended and the request that these proceedings be stayed to allow a return to state court was not first made in a Reply to the Respondent's argument for dismissal of procedurally defaulted claims, the Court will consider the merits of the Objection.
[7] 567 F.3d 573 (9th Cir. 2009) (per curiam).

- 8 -

In *Scott*, the Ninth Circuit concluded that Rule 32.6(d)[8] was not an independent and adequate state procedural ground that could prevent federal review of habeas claims because Arizona law did not consistently apply the rule in relation to whether a PCR petition could be amended after a superior court denied it.[9] *See* 567 F.3d at 581–82 ("The only condition to amendment of a filed petition is the existence of good cause. Whether a court has or has not ruled on the original petition is not mentioned as a condition to amendment.") The court noted that Arizona courts construed Rule 32.6(d) as "liberally allowing amendments" to PCR petitions, citing *Canion v. Cole*.[10] *Id.* at 581 n.6. However, in *Scott*, the attempt at amending the PCR petition occurred directly after denial and while review was still pending in state courts; and, in *Canion*, no initial PCR petition was filed, and the court discussed amendment only to prove it unnecessary to grant discovery *prior* to filing a petition. *Scott*, 567 F.3d at 578–579; *Canion*, 115 P.3d at 1261–62.

While it is true that Arizona "adopts a liberal policy toward amendment of PCR pleadings," liberal does not mean without limit. Petitioner cites no case that stands for the broad reading of Rule 32.9(d) it urges this Court to accept, and the Court has found none. In fact, unpublished decisions by the Arizona Court of Appeals have expressly denied Petitioner's broad reading.[11]

---

[8] Rule 32.6(d) was the prior formulation of the rule for amending PCR petitions and read: "After the filing of a post-conviction relief petition, no amendments shall be permitted except by leave of court upon a showing of good cause." *See* Ariz. R. Crim. P. 32.6(d) (1996). The current rule for amending PCR petitions is found in Rule 32.9(d) and reads: "After the defendant files a petition for post-conviction relief, the court may permit amendments to the petition only for good cause." Ariz. R. Crim. P. 32.9(d) (2020).

[9] Indeed, the caselaw is still not clear as to whether amendment is allowed after denial. *Compare, e.g.*, *State v. Lugo*, 2 CA-CR 11-0041, 2011 WL 2695759, at *1 (Ariz. Ct. App. May 19, 2011) (mem.) ("We agree that Rule 32.6(d) no longer provides an express bar against motions to amend after the entry of judgment in a Rule 32 proceeding.") *with State v. Conde*, 2 CA-CR 17-0326, 2018 WL 300275, at *1 (Ariz. Ct. App. Jan. 5, 2018) (mem.) ("Conde argues that the rule allows a petition to be amended even after a trial court has ruled on it. Even were we to agree with this interpretation . . . .") *State v. Ortloff*, 1 CA-CR 13-0662, 2015 WL 3932387, at *1 (Ariz. Ct. App. June 25, 2015) (mem.) ("[N]othing in Rule 32.6(d)—or any other provision of Rule 32—permits a defendant to amend his or her petition after it has been dismissed.")

[10] 115 P.3d 1261, 1264 (Ariz. 2005).

[11] *State v. Ortega*, 2 CA-CR 18-0316, 2019 WL 258300 (Ariz. Ct. App. Jan. 18, 2019) (mem.); *see also State v. Mitchell*, 1 CA-CR 16-0514, 2017 WL 3996350 (Ariz. Ct. App. Sept. 12, 2017) (mem.) (ruling that the superior court did not abuse its discretion by denying a motion to amend that was filed three years after the original petition and that in any event the motion was untimely). In *State v. Ortega*, the court of appeals remarked that

As noted by the Arizona Supreme Court in 2009, Rule 32.2(a), which precludes filing successive PCR petitions except under particular circumstances, "serves important principles of finality" and "allows any relief to be issued at a time when the interests of justice . . . can best be served." *State v. Shrum*, 203 P.3d 1175, 1178 (Ariz. 2009). To allow amendments to original petitions years after they have been fully decided by the state courts would uproot the system Arizona has created. No meaning could be given to the restrictive rules on successive PCR petitions if a petitioner could always amend an initial petition, years after denial, upon only a showing of good cause. *See Ortega*, 2019 WL 258300, at *1 (this "would effectively nullify our rules precluding untimely claims [and] we will not read Rule 32.6(d) to permit such amendments"). The Court concludes that Rule 32.9(d) does not allow amendments to PCR petitions years after they have been denied.[12]

Therefore, the Court finds the Magistrate Judge's analysis was not in error and she correctly concluded that Petitioner's claims were procedurally defaulted under Rules 32.1 and 32.2 of the Arizona Rules of Criminal Procedure governing successive PCR petitions. Since the Court concludes that there is no ability for Petitioner to amend her PCR petition, her request for a stay is denied. Further, because Petitioner has not "demonstrate[d] cause for the default and actual prejudice" or "that failure to consider the claims will result in a fundamental miscarriage of justice," the Court does not reach the merits of her claims. *See Coleman*, 501 U.S. at 750. The Court overrules Petitioner's objection based on Rule 32.9(d).

**B.**   *Martinez v. Ryan*

Petitioner argues, for the first time, that her PCR counsel rendered ineffective

---

although "Rule 32.6(d) permits a petition to be amended upon a showing of good cause . . . nothing in our rules of criminal procedure permits such amendment years after the defendant's initial petition has been dismissed or denied." *Ortega*, 2019 WL 258300, at *1. It went on to say that such a construction of Rule 32.6(d) "would effectively nullify our rules precluding untimely claims [and] we will not read Rule 32.6(d) to permit such amendments." *Id.*
[12] Furthermore, even assuming the Court agreed with Petitioner's broad reading of Rule 32.9(d), Petitioner has presented no argument that good cause exists to amend her petition, despite stating that the Magistrate Judge's analysis should have included such a review. (Obj. at 11 ("[T]he controlling issue . . . is whether good cause exists for allowing such amendment . . . the Magistrate Judge's analysis is in error.").)

assistance by failing to present grounds 1(c), 2(a), 2(d), 3, 4(a), 4(b), and 5(b) (among other arguments) to the PCR court regarding *trial* counsel's ineffectiveness. (Obj. at 14–15.) Petitioner contends that any claims that involve both ineffective assistance of trial counsel and that were not presented in the PCR petition or on appellate review are excused from procedural default under *Martinez v. Ryan*. (*Id.*) Respondents reply that Petitioner waived any argument based on *Martinez* when she failed to present it in her Petition or in a reply. (Resp. at 3.) Additionally, Respondents argue that Petitioner has not met her burden to demonstrate that the underlying claims of ineffective assistance of trial counsel are substantial. (*Id.*) Petitioner requests to amend her habeas petition "with *Martinez v. Ryan* in mind" or, alternatively, to stay these proceedings while she seeks to amend her PCR petition under Rule 32.9(d).[13] (*Id.* at 15.)

Petitioner's claim of ineffective assistance of PCR counsel is untimely and this Court may decline to consider the argument based on that ground alone. *See United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000) (concluding that it is within the district court's discretion whether to consider evidence presented for the first time in a party's objections to a magistrate judge's recommendation). However, in light of the fact that Petitioner's current counsel did not appear prior to issuance of the Report and Recommendation, pursuant to its discretion the Court considers her argument.

As stated above, a federal court may still conduct habeas review of procedurally defaulted claims if the petitioner can demonstrate cause and prejudice or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Generally, ineffective assistance of counsel in a state post-conviction proceeding cannot constitute "cause" because there is no constitutional right to an attorney in such proceedings. *See id.* at 752–53. However, *Martinez* recognizes a "narrow exception" to this general rule: "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance

---

[13] Because the Court has previously concluded that Rule 32.9(d) does not allow Petitioner to amend her original PCR petition years after it has been denied, such relief is also not available under this objection.

- 11 -

of counsel." 566 U.S. at 9; *see also Kayer v. Ryan*, 923 F.3d 692, 725 (9th Cir. 2019) ("failing to raise a meritorious ineffective assistance of counsel claim may constitute 'cause' sufficient to overcome a procedural bar"), *petition for cert. filed*, No. 19-1302 (U.S. May 20, 2020). "When a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default . . . where appointed counsel in the initial proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*."[14] *Martinez*, 566 U.S. at 14. "[A] prisoner must also demonstrate that the underlying ineffective-assistance-of-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

Petitioner has simply not met her burden. Petitioner baldly asserts that PCR counsel's failure to raise additional instances of trial counsel errors constitutes ineffective assistance of counsel under *Strickland*. (*See* Obj. at 14.) Petitioner has provided little argument for why those purported failures amount to deficient performance or that the deficiency prejudiced Petitioner. *See Strickland*, 466 U.S. at 687. Nor does Petitioner demonstrate that the underlying ineffectiveness claim has merit. *See Martinez*, 566 U.S. at 14. The findings of the PCR court and the Arizona Court of Appeals regarding Petitioner's claim of ineffective assistance of counsel at trial are clear: that regardless of whether such errors constituted actual deficiencies, Petitioner was not prejudiced in light of the overwhelming evidence against her at trial. (*See* Ex. X at 4–9; Ex. AA at 3; Ex. EE at 3–5.)

It is within this Court's discretion whether to allow leave to amend a petition for writ of habeas corpus. *See* 28 U.S.C. § 2244 (A writ "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). However, Petitioner has done little more than recite the holding of *Martinez* in claiming that her PCR counsel was

---

[14] 466 U.S. 668 (1984). Under *Strickland*, to establish an ineffective assistance of counsel claim a defendant must demonstrate that counsel's performance was deficient and that such deficiency prejudiced the defense. *Id.* at 687.

deficient. (*See* Obj. at 13–15.) Petitioner has not shown enough to justify allowing amendment of her Petition at this late time.

Petitioner's objection is overruled, and her request to amend her Petition, or in the alternative a stay of the proceedings to amend her PCR petition, is denied.

## IV. CONCLUSION

Having reviewed the record de novo, the Court overrules the Objections, adopts the Report and Recommendation, denies the Petition, and dismisses it with prejudice.

**IT IS ORDERED** overruling the Objections to the Magistrate's Report and Recommendation (Doc. 17).

**IT IS FURTHER ORDERED** adopting the Report and Recommendation of the Magistrate Judge as the Order of this Court (Doc. 9).

**IT IS FURTHER ORDERED** denying Petitioner's Petition for Writ of Habeas Corpus and dismissing the Petition with prejudice (Doc. 1).

**IT IS FURTHER ORDERED** denying a Certificate of Appealability and leave to proceed in forma pauperis on appeal because dismissal of the petition is justified by a plain procedural bar and jurists of reason would not find that procedural ruling debatable, and Petitioner has not made a substantial showing of the denial of a constitutional right.

**IT IS FURTHER ORDERED** directing the Clerk to enter Judgment accordingly.

Dated this 23rd day of September, 2020.

Susan R. Bolton
United States District Judge